Good morning, Illinois Public Court First District Court is now in session. The fourth division, the Honorable Justice Bertina Lampkin presiding case number 21 dash 1080 people versus Charles Lee. Good morning, everyone. I'm not in my office, so you have the background that is not the courtroom, just want everybody to know that on this case, I'd like the parties to identify themselves as first for the record. And we give both sides 15 minutes. We will probably ask questions. So if we go over with the questions will certainly allow you to complete your presentation. And for the person who is the apple lot, you should tell me how much time you want to. To reserve for your. And the parties can now introduce themselves. Good morning, your honors counsel. My name is Amanda Ingram for Charles Lee. Morning, your honors and counsel. This is Assistant State's Attorney James Stumpf for the people of the state of Illinois. How much time do you want to reserve for your rebuttal for rebuttal I anticipate, perhaps three to five minutes. Okay, whenever you're ready. You can you can proceed. Thank you. Good morning, your honors counsel and may it please the court. My name is Amanda Ingram, and again I represent Charles Lee an issue before this court today is whether guilty plea counsel was ineffective, where he misunderstood the applicable sentence that Lee faced by entering a non negotiated guilty plea. Lee was prejudiced where counsel walked him into a mandatory natural life sentence with no possibility of parole. There was zero benefit to proceeding in this manner. This court should reverse the lower courts denial of his motion to withdraw the plea. First, counsel's performance was objectively unreasonable. Competent counsel would not have guided his client into a mandatory sentence of natural life in prison without the possibility of parole. Counsel should, at minimum, know the applicable sentencing range and provide accurate advice on the possible sentence, especially when there is a mandatory sentence as here. When the court advised during the plea proceeding that this was a mandatory natural life sentence defense counsel maintained that there was a lot of mitigation in Lee's favor and that it was not mandatory. And that the court quote still has discretion to not sentence him to life. The court did not correct defense counsel at this time but instead asked Mr. Lee if he had anything to say, at which time we read a letter that presumably he had composed at some point prior to the hearing, during which he begged for another chance at freedom and for the court to be merciful. Right after that, the court indeed sentenced him to natural life in prison. Excuse me, counsel, but before that, that was in the sentencing stage of the plea hearing. There was a question presented to the defendant when the court was giving admonishments and determining whether the defendant's plea was knowing involuntary. He was told at that point that it was a mandatory sentence by the trial court, and he was asked if he wanted to continue his plea. And he said yes. So, what do we think of that part of the plea hearing. Well, again, I don't think you can look at, excuse me, you can look at that exchange in isolation. The court did admonish him. Do you still want to plead guilty knowing these facts. But again, we have to look at what happened right up, you know, shortly after that, which was his own attorney saying no, it's not mandatory. And the court does have discretion to sentence him to something other than natural life in prison. And we know that Mr. Lee relied on this because the letter that he composed indicates that he is asking for another chance at freedom. He obviously is not writing this letter in anticipation, excuse me, of getting a natural life sentence. So, the entirety of the circumstances need to be viewed, not just this one exchange with the court in isolation. Especially after, again, when defense counsel said it's not mandatory, you have discretion. The court didn't take that opportunity to, again, correct defense counsel. At which point, perhaps defense counsel would have said, you know what, wait a minute, let me let me take a step back, go talk to my client. You know, we thought there was discretion because, again, there was absolutely no reason for any attorney to walk anybody into a non-negotiated guilty plea where the only result is natural life in prison. This was a devastating result for Mr. Lee. Counsel's actions here are simply inexplicable. There's absolutely no reason to enter into a non-negotiated guilty plea where there is no chance of anything other than a sentence of natural life in prison. This is objectively unreasonable. There's just simply no reason for any competent counsel to behave in this way. Taking that as truth, the element of prejudice still needs to be established. Yes, of course. And you say that the only outcome is mandatory life. So tell me what the prejudice is, if he, you know, are the consequences different than if he had plead guilty or if he had pled not guilty and proceeded with the case? The short answer is yes, there is prejudice here. The reason is this court has to consider would it have been rational to reject a non-negotiated plea where the outcome was natural life in prison or go proceed to a bench or jury trial where, again, maybe there's a slim chance of success, but at least he hasn't waived all of his potential issues. And the record does indicate that there had been pretrial motions filed that were withdrawn prior to the plea hearing. We don't know what all would have come out of that. So even if we say based on the factual basis, the state obviously had a case against him, there was evidence against him, but we can't speculate about what would have happened at a jury trial or a bench trial. And the other thing, too, is he had previously had a far more generous offer of 22 years in prison. That offer was rescinded for reasons that are not clear, but the previous state's attorney apparently did not view this as a case that merited natural life in prison without the possibility of parole. So potentially he could have been maybe he could have tried to open negotiations again with the new state's attorney. There were other available avenues that he could have taken rather than to just gliding into a sentence of natural life in prison, waiving all of his issues. There's clearly prejudice in this case where he's got the worst sentence that Illinois has to offer. I mean, this is the absolute most severe sentence for a guy who apparently at some point previously had been offered 22 years in prison. So it really just does not make sense for counsel to proceed in this way. And yes, there was prejudice in the state's brief. It argued that I stop you for just one second. I want you and the state to respond to this basically almost verbatim what the judge said, because when I read the admonishments, I never heard the judge ask the defendant if he understood the 60-30 or the 60. He never got an answer from the defendant that he understood. Then the judge didn't say this is mandatory. He asked the judge. I mean, he asked the state, is this mandatory? And the state said yes. And then the judge said to the defendant, knowing all this without getting from the defendant the fact that he did know this. I want to make sure that we're all on the same page as to what the judge actually said. And then I want you both to address after the state filed the petition to judge him a habitual. Did the judge read that statute correctly? Tell me what you think of the defense's asking, can I see the statute? The judge reading the statute? This is a lot, but I'm upset about the way this record looks to me. It does not look as if the judge even read the statute correctly. So I'd like you all to look at how he read the statute. And once he read the statute and the defense made their statement and the defendant made his statement, did the judge ever correct the lawyer or the defendant? Or he just said, okay, this is natural life. You got natural life. Right. If I can. You all can respond to all your points from the start to the finish. So I agree that the admonishments could have been more clear in terms of being more precise and what the sentences were and what and if Mr. Lee understood what mandatory means. I think it is possible that, especially for someone who had previously been offered a sentence of 22 years, not understanding why natural life is now at play. The court, the court didn't say he, he, he, he gave these admonishments of 6 to 30 years. And he said, quote, it's my understanding that because of your extensive background, your mandatory life. Is that correct? States attorney responded. That's correct. The court said, knowing all that, you still want to plead guilty to these charges. The defendant never said he understood all that. He does not. Right. He did not say he understood. And again, complicating this matter is we know that defense attorney also did not understand because defense attorney is still maintaining later in the hearing that it's not mandatory. It's not discretionary. And you're correct that when the state's attorney brought the statute out, the defense attorney says, can I see that and wants to read it? So, it's, it does not seem that defense attorney was particularly familiar with this statute. He, he did read over it. But again, we know that he wasn't. Up to date, I suppose, on what was going on, because there was this misaligned misalignment in terms of what everybody's understanding was they were definitely not on the same page. And again, Mr. Lee is sort of caught in the middle. And he, of course, he, we must presume that he's listening to the judge. He hears the judge saying this, but he also has his defense attorney right here saying. We can, we can get a sentence. We can get a term of years. Mandatory life is not, you don't have to get sentenced to mandatory life. It is discretionary. There's a chance, you know, if you write this heartfelt letter, perhaps the judge will be persuaded. So, he's sort of yanked in two directions. And he's not, again, like, this is not an attorney. This is not somebody who's maybe going to be tuned into the nuances of why a 22 year sentence was available before and it's not anymore. I mean, these are these are more advanced questions that a regular defendant is naturally going to rely on the advice of his attorney, which in this case was not just incorrect, but incorrect in the absolute worst way possible. Your Honor, I think I'm forgetting the last part of your concerns. Can you remind me what it was? When the judge read what the statute said. First, the statute, it's, it's recently amended. It's not in the books. Clearly, that's in the record. So, the judge gets a copy of it from the prosecutor, and then the judge reads the statute. I don't think he read the statute even correctly, because there's a line in it. And this is this, I should have this in front of me, but I'm at home. There's a line that that says, basically, if you've been convicted of an offense with the same elements or substantially similar elements or particular crime, you can, and you've got these two priors within this period. He just says, if you're convicted of an offense. He doesn't even say what the offense is in the admonishments. And I can't remember what the statute reads because I haven't done, I haven't been a trial judge for 15, 14 years. But the statute says, if you're convicted of a class X offense, you know, or a similar offense, none of that is in there in what he reads that I can recall from reading these admonishments. It looks like they state the case numbers, and they review it from the PSI, but they don't specify the exact nature of these priors. I see, I see what you mean. I, I don't have it directly in front of me right now. But, you know, again, it's not that I don't have it in front of me. And that certainly complicates the matter if the judge wasn't wasn't reading the correct statute or misinterpreted the statute in some way. But even apart from that, I'm sorry, I didn't interrupt. But if, if you both of you read it, and Mr. Stump, if you can, we'll give you time to find it. It seems like the judge is trying to figure it out as he goes along with the state. The 20 years, how does the 20 years for the prior convictions, how does that come into play? How do you exclude the time in custody? He's having this discussion back and forth with the state's attorney. And then Mr. Dasch is like, standing there, like a, well, standing there and not saying anything. And even after Mr. Dasch, and the state can tell me if I'm wrong, even after Mr. Dasch says it's not mandatory, the judge doesn't correct him. He just goes on to the defendant and says, what do you have to say? And at any rate, any, any, Mr. Stump, if you can find those things I'd appreciate it. Go on, Ms. Singer, I'm sorry. Sure. Yeah, I mean, I certainly agree with you, Your Honor, that the statute should have been understood by everyone involved, especially the lawyers. At the time of the hearing, I mean, obviously, preferably before, you don't want to be figuring these things out on the fly, especially when the stakes are so high. Again, looking at a potential sentence of mandatory life in prison, this is something that deserves attention and care and make sure that we're not sentencing people to natural life in prison based on a misunderstanding of a statute, especially when it's new. And again, I think you're correct that when the guilty plea attorney says, can I see the statute again, he appears to look for it briefly, but he maintains his position that it's not mandatory, it's discretionary. And again, yes, the court doesn't correct him at that point. There's no pause in these proceedings at all where everybody can get on the same page, where Mr. Lee can really grasp what's happening, that if he continues and persists in this plea, that no matter what he says in his letter, a sentence of less than natural life is not possible. Not that there's any guarantees, of course, but that it is simply not possible. There's no range here. This is just a sentence of natural life. Again, it's the most severe sentence for someone who, yes, who committed a very serious crime. But at some point in these proceedings, the state believed that this was a 22-year sentence would be adequate to punish Lee for what he did. And then to have that extreme leap from a 22-year offer taken off the table, and now we have this option of a natural life prison sentence, there's no rational reason to do that at that point. If I could interrupt counsel again, sorry. You talked about how it was important for the attorneys involved to understand what the correct sentence was. But the state is relying on the judge's admonitions and arguing that the defendant was not impacted by the ineffectiveness of this counsel because the judge clearly stated what was going on here. So can you tell me that the admonitions were clear enough for the defendant so the ineffectiveness was overcome? The ineffectiveness was not overcome. Again, the admonitions and the point where the judge asks him, knowing all that, you still want to plead guilty, this occurred in between other events. So we know that Mr. Lee composed this letter prior to this hearing, at some point prior, and this letter clearly indicates that he is trying to persuade the judge to give him another chance at freedom at some point. He is seeking a term of years. He is clearly seeking something other than natural life in prison. That is the content of this letter. This letter was composed prior to the hearing. At the hearing, yes, the judge does admonish Mr. Lee that you're going to, because of your background, I have to sentence you to natural life, knowing all that. Oh my gosh, I'm so sorry, something just fell out of my window. Immediately, and defendant does say yes, but right after that, defense attorney, again, he says it's not mandatory. It's discretionary. There's no reason for Mr. Lee. He either has to ignore his attorney and be able to understand in that moment that his attorney is incorrect and has incorrectly advised him, or he has to accept what the judge is saying. He's torn between two places. And in the criminal justice system, we see it all the time where defendants are told, listen to your attorney. You have an attorney. You have a good attorney. Listen to your attorney. Don't talk to the judge. There's not a point in this proceeding where Mr. Lee, where it would be appropriate for him to say, hey, wait a minute, judge, he's listening to his attorney. His attorney has told him before and after these admonishments that something other than a sentence of natural life is possible. This is the context in which these entire proceedings are occurring, where they're not on the same page and Mr. Lee is caught in the middle begging for a chance at freedom. It's simply not fair, truly, for Mr. Lee to have to decide between, do I take what the judge is saying? Do I listen to my attorney? He's listening to his attorney, who, again, is maintaining throughout this entire thing that it's not mandatory. I mean, it was clearly an extremely devastating outcome for Mr. Lee, who's hoping for something else, for anything else other than natural life. And because, directly because of his attorney's decision making in this process, this is what he was left with. And I have another question based upon Justice Rocha, because I don't think that the judge ever, at the admonishment regarding the sentence, said, and this is a mandatory life sentence. Do you understand that? I think he, and I wish I had it in front of me, but I think after he went through the 6 to 30, and then the 60, he said something like, it's my understanding that this mandatory life, is that correct or something? And then the state says yes, as if the judge himself, I'm not, I know this is not the exact wording, but. Your Honor, I have it right here. The judge goes through what he's charged with for the Class X, the 6 to 30, and then he says, it's my understanding that because of your extensive background, your mandatory life, is that correct? The state's attorney answers, it's correct. He's asking a question. He's not telling the person, this is the sentence he's asking. Presumably, the state says yes. The state says yes. I just wanted to make sure. No, your recollection is correct. And then the court says, knowing all that, you still want to plead guilty to these charges. The defendant says, yes, sir. And again. The defendants never said, yeah, I know all that. I understand all that. Right. And anything the judge is saying here is complicated by what his defense attorney's position is. So there's no, nobody is on the same page in this courtroom. And it's Mr. Lee who's been caught in the middle. He is the one who's left with, again, the most severe sentence after previously being offered a much more, less severe sentence. And for Mr. Stumpf, I want you to answer. I probably have a million questions. I think it's because I was a trial judge for 22 years, and this is nothing like I've seen before. If you think a judge saying, it's my understanding, is this correct? Is a statement that he knows that this is mandatory? Or is this a statement that maybe it's not mandatory when he asks that statement? I'm finished. I'm going to try to be quiet. Well, Your Honors, I think I've made most of my points. Are there any other questions? If not, I'll briefly conclude. Okay. Justice Rochford or Justice Martin, anything further? All right. Counsel, you can proceed. Thank you. Again, Your Honors, the question before this court is whether guilty plea counsel was ineffective. I submit to you that he was. He was objectively unreasonable to walk his client into a natural life sentence, a mandatory natural life sentence, and Mr. Lee was prejudiced. It was not a rational choice to enter into a non-negotiated guilty plea with zero benefit and also be stuck with a sentence of natural life with essentially no other options. Proceeding in this manner had no benefit to Mr. Lee and no competent counsel would do the same. This court should reverse the lower court's denial of Mr. Lee's motion to withdraw his plea. Thank you. Thank you. And Mr. Stump, you can take as long as you want. I do want to ask this question now so I don't forget. Was 22 years offered to this gentleman? Is that reflected either in your half-sheet? Because I know there was a half-sheet. And I just want to know, was that offer actually made? Based on what I have on the record, Your Honor, is just what the defendant was saying, that it was offered. So I don't have the half-sheet, but if you'd like me to do some supplemental reading to answer that, I'd be happy to. I'd really like to have that answered because the state's attorney, when the defendant said it, never said it didn't happen. And normally that would have happened if that offer had not been extended. The defendant not only said another state's attorney made it, but this particular state's attorney who was there was the one who withdrew it and he never disputed it. Sure, sure. I'd like that. Sure, absolutely. And Justice Lampkin, just to answer one of the last questions you asked counsel as to whether I think the judge did confirm when he initially was admonishing the defendant in the plea colloquy. Yes, he did ask the assistant state's attorney, is that correct? But he said, the court said, it's my understanding that based on your background, you were natural alive. So it's our position that the judge was confirming at that point. It was his belief that it was, but he was double-checking with the assistant state's attorney. I hope that answers your question as to my position on that. Yeah, then does he get the defendant's acknowledgement that the defendant understands that sentencing range and the mandatory? Or does he just assume he understands this by saying, knowing this, which is what basically his next line was. I'm concerned that there's no acknowledgement by the defendant that he understands what the judge has said. Not just the mandatory part, but the whole thing, 6 to 30 and extended 60. And based upon what the state's attorney has now confirmed with me, it's mandatory. Does he ever get the defendant's? It goes more to knowing and voluntary to me than to anything else. But I don't see that in there, and that is concerning to me. I understand where you're coming from, Your Honor. But it's our position in the whole context of this plea. So you have the plea colloquy, and the court says, it's my understanding that your mandatory life. State's attorney confirms. Then the court says, knowing all that, do you still wish to plead guilty? The defendant says, yes, sir. Then we move into the sentencing phase. In the sentencing phase, the ASA moves to judge him as a habitual criminal and argues that it's a mandatory natural life sentence. Then the judge agrees with them on page C-326, saying it's a mandatory life sentence that must be imposed in this case. And then, as we all know, defense counsel contradicts this. Wait a minute. OK. All right. That's what I wanted to say. Chronologically, OK. Yeah, I'm going chronologically, Your Honor. Then counsel contradicts this. Then the court gives him an opportunity to speak. And as defense counsel pointed out, he says a lot of things in this letter. He points out the prior plea deal that we discussed earlier. He asks for mercy. He asks, give me one last chance at freedom. He also discusses his family. He apologizes to the victim. He talks about his drug uses. He says a lot of things. It's our position what he doesn't say is also very important here. Four times before, twice by the court, twice by ASA, has said that he is subject to mandatory life sentence. Yes, counsel was incorrect afterwards and contradicted that. But the defendant didn't say anything about that. He didn't say, wait a minute, wait a minute. My attorney never told me. My attorney has told me this was discretionary. I thought I could come out one day. Or he didn't try to withdraw his guilty plea either. At no point did he say, wait a minute. I don't want to plead guilty anymore. I thought this was a discretionary sentence. He didn't do that. And why is that important? It's one of the two key reasons that it's our position that distinguishes this case from the Boyd and the Lee cases that defense counsel cited. There, in both of those cases, there was testimony at the hearings on the motions to withdraw the guilty plea, which did not happen here. All we have with this record is this sentencing hearing. And Boyd and Lee, there was testimony from the defendant and defense counsel that in the case of Boyd, it was a good time credit. And Lee, it was deportation. The testimony established that those were key issues as to the determination as to why the defendant pled guilty. Here, we don't have that. What we have is this record where he doesn't at all try to withdraw his guilty plea or say, you know, wait a minute. That's not what my attorney told me. And another key distinction, I think, of those cases, at least for Lee, is the unusual circumstances that the United States Supreme Court pointed out in Lee. During the plea colloquy there, the judge asked the defendant, could you be deported? Does that change your mind as to whether you want to plead guilty or not? And the defendant said yes. Here, during the plea colloquy, what we have is the court saying, knowing all that, your mandatory life, discuss the mandatory life. And it says, knowing all that, do you still wish to plead guilty? And the defendant said yes. I don't remember that at all. What you're just saying, I don't remember that. So you need to pull that up because I don't remember the judge saying, well, first, after the defense lawyers says it's not mandatory. The judge doesn't correct him. Then the defendant makes his statement. And then the judge says, basically says it's mandatory. And here's that it's a natural life. I don't remember the judge saying, knowing all this, do you still want to plead guilty? I don't remember that. Oh, I'm sorry, Your Honor. No, no, I don't recall it. So if that's if that's something he said after the defendant made his several page plea, I would like you to read that to me. Or I'll if you don't know where it is, I'll look back in the record. But I do not remember the judge giving him an opportunity to to withdraw his plea. I think after the defendant made his statement, the judge said it's a mandatory sentence. You got naturalized by and then give some of the appellate admonishments. My response, Your Honor, I was talking about the colloquy before the sentencing phase. I'm talking about back back earlier on and before his defense counsel was incorrect. I'm talking that that's what I'm knowing. OK. So if I if I may, if I may interject, Mr. Stumpf, at that time, going back to that, the judge asks this question that this assistant state's attorney answered. And then the judge responds, knowing all that it in your opinion, what is your position? It seems rather inexact to me, knowing all that, knowing all what was the first thing that that stood out to me at that time. He says, knowing all that, do you still persist in your plea? I'm paraphrasing. Do you think that it would have been advisable or was the judge required to make certain that the defendant did know, did understand knowing all of that, that knowing that he was because it just never said knowing that you you're you're only eligible for a mandatory life. The judge simply says, knowing all that, do you think that the judge was required to do to make certain that the defendant understood before sentencing him to life? My response, I understand where you're coming from, your honor. Our position is he said that knowing all that right after he said you're you're you're it's it's mandatory life. Well, the state's attorney confirmed to the judge that it's mandatory life. So that's our position that that would it was clearly referring to that. My second response to that is is rule for it was in the context of a rule for two admonishments. And, you know, there's no specific languages in rule for that the judge is supposed to say in rule for two. So I'm not sure if that answered your question, your honor. I'd also like to point out that there are transcripts that are not included in the record. It seems to me either this was a very disorganized plea hearing or that there had been discussions beforehand about possible sentences or pleas or, you know, there's some reference by the judge when he denied them. And finally, there was a, you know, a determination that the plea motion to vacate the plea was going to be denied that that we can now consider that that he had given the dependent time to think about it. I can't think that that means the time between the do you understand all this and the yes. In some of the discussion during the plea agreement sounds like, well, maybe there had been something between everybody before. I agree with what you're saying there, your honor. And I think the record also reflects that there was a. I mean, a PSI was ordered at the the the that supports this person, a PSI was ordered at the December 5th 2012 hearing that that would suggest that that that was discussed as well. Your honor. Yes. That would also suggest that something less than natural life was being offered. Maybe your honor. Correct. Correct. Correct. Unfortunately, we don't know, based on this record, that transcript from that hearing isn't on the record. And we would ask any ambiguities in this record be resolved against the defendant as the appellant in this case. I just would like to go on to another like distinguishment between Boyd and Lee, if I may go back to that. It's my understanding that Boyd didn't even discuss whether or not the admonishments cured any prejudice that the defendants suffered. And it didn't even cite Valdez, which our position of Valdez is controlling here. And it's very, very it parallels this case in a very supportive way, in our opinion, that there the court held that even if defense counsel, the court held that defense counsel's performance was deficient by not giving the defendant any advice on the consequences of deportation. But then the court went on to hold under the prejudice part. Well, because the court told defendant that he was subject to deportation and its admonishments that any deficient performance was was cured by the by the court's admonishments. Sorry. And it's our position that that is almost I mean, again, it's not exactly this. We're not dealing with deportation here, but it's our position that the principles from Valdez should apply here. And Brown, another case, the defendant relies on, you know, treated Valdez very favorably, even though Valdez was decided before Lee. It noted that Valdez Lee bolsters are to sit Brown. This is Brown. I'm talking about so that Lee bolsters our determination and Valdez that we must consider the relevant surrounding circumstances to assess prejudice. And our position is that based on these admonishments that the court was saying to the defendant, yes, his attorney contradicted him, but he cannot have just ignored the court's admonishments is what we're we're saying here, too. I mean, he can't just be rewarded for disregarding what the court's saying. Yes, his counsel contradicted the court and the state's assistant state's attorney. But, but, again, what's the purpose of a rule for to admonishment? It's not just it's not it's not for ceremony. It's not fanciful. It's it's there for a reason. And Valdez pointed that out as well. It's not that these types of admonishments are not just a mere formality. So what the fact that the after the defense lawyer says it's not mandatory, you have discretion that the judge doesn't correct the defense lawyer, it just goes right on to the defendant. It doesn't say a word to counsel as if maybe what counsel says is correct. I mean, I can't imagine a lawyer saying that and the judge not correcting. I understand where you're coming misleading the client. Yeah. I understand where you're coming from, Your Honor. I'd like to point out after the defendant reads his letter, the court does correct defense counsel and the defendant then, I believe, and again and then says again, that's where is that page? Yeah, it's fine. Yes, that's on. That's after the defendant reads his letter. Yeah. Then he imposes a sentence if I'm unless I'm wrong. After the defendant reads his letter on on page C330, he notes that the court, the court, the judge notes that he has no other leeway than to follow the statute. And it has to be mandatory. You're correct, Your Honor. But again, the defendant didn't once say on the record that, wait, I didn't that's not what I wanted to do. I don't my attorney didn't tell me that he silenced even after even after three times being matched by the court that it's mandatory life. He doesn't say anything on the record. And I mean, I'd also like to point out to it right after those that special little couple paragraphs we've been talking so much about during the plea colloquy. This is about, you know, that it's mandatory life. Correct. And then knowing all that, you still wish to plead guilty. Right after that, the court asked the defendant, has anyone threatened you or promised you anything other than to get you to plead guilty other than what is said in open court? And the defendant said, no, sir. I would support that also suggest that maybe he wasn't based on this record. He wasn't relying on counsel's advice as to whether or not it was discretionary or not discretionary. I think I've said everything I want to ask you. Yes. Counsel, your opposing counsel. Lee says that we need to consider or compare the consequences of a defendant's conviction following a trial to the consequences of entering the guilty plea. And with those consequences, what are those consequences in this circumstances? And is there a difference? Are you referring to whether or not, like the rational under the circumstances standard, your honor? I'm just saying, you know, the consequences of pleading guilty here were was natural life and giving up all claims of error. Is it different than the consequences that would follow a finding of guilty at trial? It's what Lee says we need. We need to consider. I would I would suggest no. I mean, based on this fact scenario, I mean, he was he was found in the in the getaway car, the crash getaway car with the gun and with the gun still in the vehicle. I mean, it's our position that the evidence was very strong and would have been more than sufficient to have convicted him of armed vehicular hijacking. And he would he would have resulted. It would have gotten the same sentence anyway, had it gone to trial. But I'd also like to point out that Valdez on paragraph twenty nine mentions that standard and and that being said, but there's it treats it as a second step as to whether or not the admonishments cured prejudice. So it's my it's our position that this court should focus on that second step there as to whether or not the court's admonishments cured the prejudice. Any any prejudice that defendants sustained from counsel's being incorrect on what sentence he faced. But we the case law says that we need to consider whether the admonishment effectively. Overcomes the erroneous advice or the ineffectiveness of counsel. Sure. There's we obviously are discussing here today that there might not have been the necessary clarity or strength of the admonishments. So. So we would need to go on then, is that correct? To compare the consequences. Of pleading guilty with what happens if he's found guilty after a trial. I know. I don't think that's our position. We believe it should be decided. Well, I just. I thought that's what you said, that that that it's the second step after. Yes. Yes. Yes. So the second step is, is whether the admonishments cured any prejudice that the defendant sustained. That that that's what we're arguing, Your Honor. Do you have any other questions for me? I don't. Justice Rashford or Justice Martin. All right. Thank you. Thank you. Miss Ingram, you can conclude. All right. Your Honor, I do have several points in rebuttal. One, Valdez was a negotiated plea, not a non-negotiated plea. As you know, non-negotiated and negotiated pleas are two different sets of circumstances. And they're they're apples and oranges. So that's not really applicable here. And the other thing in Valdez is those admonishments were not contradicted by defense counsel and open court. So, again, very much not the facts that we have here regarding the previous offer of 22 years. The state certainly never disputed that when Mr. Lee was talking about it. And it would make sense if that offer had never been proposed. The state's attorney at that time would say there was never any offer like that didn't happen. So the fact that there was never any dispute about the existence of that offer strongly suggests that that offer was indeed made and later rescinded. The letter doesn't say anything about mandatory natural life because the letter was composed again prior to this hearing. The letter is an effort to get some other kind of sentence, some other kind of chance. You would not expect for a letter to include within it a motion to withdraw a guilty plea. There's no reason for him to move to withdraw his guilty plea in the middle of the hearing when he's trying to get a sentence of something other than natural life, as his attorney told him was possible. So it's pretty unfair to request a defendant who's in the middle of this hearing to talk to the judge when he's represented by counsel. It's counsel's job to communicate with the court on his client's behalf. Mr. Lee is a regular defendant who is relying on the advice of counsel. It is certainly not his position to interrupt things and say, hey, that's not what I thought was going on. It's his attorney's job to represent him competently. And Mr. Lee should not be he's not he's certainly not being rewarded for ignoring the judge. It's the opposite. He's being punished for doing what he's supposed to do, which is rely on his attorney. And the there's there's certainly no no windfall here. If his guilty plea is is withdrawn, then he's back to square one, still facing everything as before. But whatever happens next, hopefully will be with the guidance of competent counsel. I so I agree with your honor that after Mr. Lee gives reads his letter, the court says, OK, section five of the statute specifically states as follows. Except for the death penalty imposed, anyone adjudged a habitual criminal shall be sentenced to a term of natural life. Imprisonment shall normally is understood to be a mandatory term for purposes of sentencing. Therefore, this court has no other leeway other than to follow the statute. And the defendant shall be sentenced to a to a life imprisonment without possibility of parole. That was what was stated after Mr. Lee read his letter. There was certainly no opportunity after reading the letter to say you're about to get sentenced to natural life. Are you sure you want to do this? It was it was over by that point. This is in the record at C-330. Again. Yeah, I remember. I know he didn't give the defendant an opportunity to withdraw or didn't suggest to him. You're wrong. Your lawyer's wrong. Do you want to withdraw? He just sentenced him. Right. I just didn't remember exactly the language. That was that was the exact language. Again, the the knowing all that, that that isn't exact. That is imprecise. And again, we're dealing with extremely serious, serious consequences here. And knowing all that is is it is not precise and it's not a clear it's definitely not a clear. It doesn't show that Mr. Lee understood every nuance of what was happening in that moment. Four or two admonishments are not going to cure the prejudice here. These admonishments, again, you cannot look at them in isolation. If we just had to look at the admonishments, then, of course, that would make our job very easy. But we're not just looking at the admonishments. We're looking at the entirety of the circumstances. And here it's clear that even after all of these admonishments, defense counsel maintains it's not mandatory. You still have discretion not to sentence him to life. So these admonishments are the the waters are complicated. The waters are muddy because there's other there's the defense attorney is taking the opposing stance and is not corrected by the court at that time. So these admonishments are in between incorrect advice on both ends, both before and after. So the admonishments are not going to cure the prejudice here. As for their transcripts that are missing, there is no ambiguity in the transcripts that are necessary for a resolution of this case. We know exactly what happened at that guilty plea proceeding there. This case had been pending for a long time. My recollection is that it was pending for more than a few years by the time it got to this point. So there probably was some back and forth, but there's no ambiguity in the record in front of this court. There is no reason for this court not to decide in Mr. Lee's favor based on the record that's that we have for us today. And, you know, it doesn't matter that Mr. Lee wasn't threatened or promised anything. He was incorrectly advised. He doesn't need to be threatened or promised because his attorney told him that there was something else. He didn't have to threaten him that there was that you've got a chance at something other than natural life. He didn't have to promise him anything that you'll definitely get something other than natural life. He said he had a chance. And that's what his letter reflects, that he had a chance at something other than natural life based on what his attorney told him and based on what his attorney maintained throughout the course of these proceedings. So it is indisputable that counsel was objectively unreasonable in proceeding in this manner. And Mr. Lee was, in fact, prejudiced. All right. Thank you both very much. Really interesting. Case kind of makes me want to go back to the trial court and try cases. We are going to take this case under advisement. Thank you both for a very interesting case and very well argued case on both sides. At this time, we will stand adjourned. And Justice Rochford and Martin, if you just stay. Thank you, counsel. Thank you. Very nice. Thank you.